566 F.2d 1353
 Nathan S. JACOBSON, Plaintiff-Appellant,
v.
TAHOE REGIONAL PLANNING AGENCY, a political subdivision of
the States of Nevada and California, the State of
Nevada, and the County of Washoe,
Defendants-Appellees.
Melvin F. JONES, Verona M. Jones, his wife, Leo D. Wyrsch,
Cora E. Wyrsch, his wife, Paul W. Gould, Lola E. Gould, his
wife, Joseph Trinchero, Delores G. Trinchero, his wife, Paul
Williams and Lanai Corporation, a California Corporation,
Plaintiffs-Appellants,
v.
TAHOE REGIONAL PLANNING AGENCY (T.R.P.A.), a political
subdivision of the States of Nevada and California,
California Tahoe Regional Planning Agency, the State of
California, Placer County and El Dorado County,
Defendants-Appellees.
LAKE COUNTRY ESTATES, INC., a corporation, and Country Club
Estates, a partnership, Plaintiffs-Appellants,
v.
TAHOE REGIONAL PLANNING AGENCY, COUNTY OF EL DORADO, STATE
OF CALIFORNIA, et al., Defendants-Appellees.
LAYTON-TAHOE PROPERTIES, Plaintiff-Appellant,
v.
TAHOE REGIONAL PLANNING AGENCY, State of California, State
of Nevada, County of Placer, United States of
America, Defendants-Appellees.
 Nos. 75-2400, 76-1182, 76-1289 and 76-1608.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 21, 1977.
As Amended on Denial of Rehearing Jan. 30, 1978.
 
 Richard A. Clarke (argued), of Rockwell, Fulkerson & Barry, San Rafael, Cal., for plaintiffs-appellants.
 Gary A. Owen (argued), of Owen & Rollston, South Lake, Tahoe, Cal., Gary H. Moore (argued), of McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., James H. Thompson, Chief Deputy Atty. Gen. (argued), Carson City, Nev., Reginald Littrell (argued), Auburn, Cal., for defendants-appellees.
 Appeals from the United States District Court for the Eastern District of California.
 Appeal from the United States District Court for the District of Nevada.
 Before WRIGHT, GOODWIN, and ANDERSON, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 I.
 THE TAHOE REGIONAL PLANNING COMPACT
 
 1
 Some background information is necessary for an understanding of this opinion. In 1968, California and Nevada entered into a compact to create a regional agency with power to regulate and control development within the Lake Tahoe Basin. Cal. Gov't Code § 66800 et seq. (West Supp.1974); Nev.Rev.Stat. § 277.190 et seq. (1973). Congress consented to the Tahoe Regional Planning Compact (hereinafter "the Compact") in December 1969.[1] Pub.Law 91-148, 83 Stat. 360 (1969).
 
 
 2
 The governing body of the Tahoe Regional Planning Authority (hereinafter "the TRPA") was charged with adopting ordinances, rules, regulations and policies to effectuate a regional plan setting minimum standards for water purity, zoning, shoreline development and the like.[2] The TRPA enacted a comprehensive Land Use Ordinance which limited the permitted uses of certain lands within the Basin, including those owned by appellants.
 
 
 3
 Land belonging to appellants and previously zoned as residential, multiple residential, or commercial was rezoned as "General Forest District,"[3] "Recreation District,"[4] and "Conservation Reserve."[5] Generally, the ordinance allowed very limited residential use, and no tourist, residential or commercial use, of the rezoned land. Other permitted uses included hiking trails, campgrounds, stables, recreation camps, skiing facilities, timber growing, livestock grazing and electrical substations. In addition, outdoor recreation concessions and educational facilities were allowed in the "Recreation District."
 
 
 4
 Appellants complain that the Land Use Ordinance constituted an inverse condemnation, or a "taking," of their property. Basing their claims on the Fifth and Fourteenth Amendments to the United States Constitution and on the just compensation clauses of the constitutions of California and Nevada, they sought injunctive, declaratory and monetary relief against a variety of defendants, including the TRPA, its executive director and members of its governing board, several counties in the Lake Tahoe Basin, the states of California and Nevada, and the United States.
 
 
 5
 The district courts dismissed the suits for a variety of reasons. On appeal we rendered an opinion on August 5, 1977. On petition for rehearing, and responses thereto, we withdraw our opinion of August 5th, and issue the following opinion in its place. The petition for rehearing is otherwise denied.
 
 II.
 THE CAUSES OF ACTION
 
 6
 Before we can ascertain whether appellants' complaints should have withstood the motions to dismiss below, we must determine under what theories appellants might have proceeded to trial. First, we consider the causes of action grounded on the just compensation provisions of the constitutions of California and Nevada.
 
 
 7
 By consenting to the Compact, Congress transformed the contract between the two states into federal law. League to Save Lake Tahoe v. TRPA,507 F.2d 517, 523 & n. 13 (9th Cir. 1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). Although the TRPA must be considered an agency of the contracting states, it operates under the aegis of federal law. Consequently, causes of action based on the state constitutional provisions must fail because the Compact, as federal law, preempts state law.
 
 
 8
 Appellants also challenged the TRPA's ordinance under the due process clause of the Fourteenth Amendment to the United States Constitution, alleging arbitrary and oppressive state action. We think that a cause of action rooted in the Fourteenth Amendment may be appropriate since the TRPA is, in effect, an agency of the contracting states.[6] It would be unreasonable to allow states to avoid the constraints imposed by the Fourteenth Amendment simply by joining forces with each other. Such an aggregation of state power makes the need for those constraints even more pressing.
 
 
 9
 Finally, appellants challenge appellees' actions under the due process and just compensation clauses of the Fifth Amendment. Since the Compact is federal law, League to Save Lake Tahoe v. TRPA, supra, resort to the Fifth Amendment as well is proper.
 
 
 10
 We find, however, that a cause of action for inverse condemnation under the just compensation clause cannot be stated against the TRPA, its executive director or members of its governing board because they lack condemnation authority.[7]
 
 
 11
 Appellants do allege facts sufficient to support a claim under the due process clause.[8] As the Supreme Court has stated:
 
 
 12
 Due process of law in the (Fifth Amendment) refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law.
 
 
 13
 Hurtado v. California, 110 U.S. 516, 535, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884).
 
 
 14
 The Compact is a "law of the land," deriving its authority from powers conferred upon Congress by the Constitution. The due process clause was intended to protect the liberty and property interests of individuals from invasion by the arbitrary and oppressive exercise of power by the federal government. Since appellants allege such an invasion of their property interests, they have stated a cause of action under the Fifth Amendment.[9]
 
 III.
 LIABILITY OF THE TRPA
 
 15
 We turn now to the liability of the TRPA, the only defendant against whom the district courts did not dismiss the suits.
 
 
 16
 The Compact evidences a delegation to a separate legal entity of authority ordinarily residing in each of the two states. With Congress' constitutionally required approval, the TRPA exercises a species of state authority. In effect, the bi-state Authority serves as an agency of the participant states, exercising a specially aggregated slice of state power.[10] As such, it would appear that the TRPA is protected by sovereign immunity, preserved for the states by the Eleventh Amendment.
 
 
 17
 The Supreme Court indicated as much in Petty v. Tennessee-Missouri Bridge Com'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). Although the defendant was a bi-state corporation created by compact, Justice Douglas, writing for three Justices in the majority, phrased the issue in a telling manner: "The question here is whether Tennessee and Missouri have waived their immunity under the facts of this case." 359 U.S. at 277, 79 S.Ct. at 787 (emphasis added). The Court allowed the suit to lie against the bi-state corporation because it found that the constituent states had expressly waived their immunity.
 
 
 18
 Admittedly, the six-Justice majority was evenly divided on the "constitutional question as to whether the Eleventh Amendment immunizes from suit agencies created . . . under state compacts." Without indicating any doubt as to the wisdom of finding an Eleventh Amendment immunity for bi-state corporations, three concurring Justices felt that it was unnecessary, given the finding of waiver, to reach the constitutional question.
 
 
 19
 But Petty 's precedential value is strengthened by the three Justices in dissent. With Justice Frankfurter writing, they concurred in what they understood to be "(t)he Court('s) acknowledg(ment of) the applicability of the provisions of the Eleventh Amendment to the Tennessee-Missouri Bridge Commission." They limited their dissent to the finding of waiver.
 
 
 20
 The final tally has six Justices, along with the Court of Appeals for the Eighth Circuit, agreeing that bi-state compacts do preserve Eleventh Amendment immunity for entities created under them. Three Justices did not reach the question. None argued that the Eleventh Amendment does not apply.
 
 
 21
 Following the precedent of Petty, we conclude that the TRPA is immune from suit under the Eleventh Amendment so long as the states have not waived their immunity as to suit against the entity which they created. Moreover, even did we not consider ourselves bound by Petty, we still would find immunity for the reasons set forth in the opinion of the Eighth Circuit. Petty v. Tennessee-Missouri Bridge Com'n, 254 F.2d 857 (8th Cir. 1958).
 
 
 22
 We find in another part of this opinion that the states which joined in the Compact did not waive their immunity so as to allow suit against the TRPA.[11]
 
 
 23
 While adhering to the Eleventh Amendment, the federal courts have preserved for themselves the power to enjoin state officers from enforcing unconstitutional state laws. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), an opinion defining the scope of the power preserved under Ex parte Young, the Supreme Court acknowledged the continuing force of that doctrine, choosing merely to limit it to the issuance of prospective equitable relief. 415 U.S. at 677, 94 S.Ct. at 1362.
 
 
 24
 Thus, plaintiffs in this case can maintain a suit for injunctive and declaratory relief against the officers of the TRPA, an offspring of the states of Nevada and California. Their potential relief must be limited to prospectively enjoining enforcement of the allegedly unconstitutional Land Use Ordinance,[12] and a declaration of their rights with respect to it.
 
 IV.
 
 25
 LIABILITY OF THE DEFENDANTS OTHER THAN THE TRPA
 
 
 26
 Appellants also appeal from the district courts' dismissals of the other defendants. Among them were counties in the Lake Tahoe area, the states of California and Nevada, the United States, and the executive director and members of the governing body of the TRPA.
 
 
 27
 A. THE COUNTIES.
 
 
 28
 The only possible cause of action against the counties would be one to enjoin their enforcement of the challenged ordinance. As to monetary and declaratory relief, the action against the counties was properly dismissed because the alleged infringement of constitutional rights arises from the action of the TRPA. The Compact limits the involvement of the counties to a sharing of the enforcement power with the cities, the states and the TRPA. Their involvement is purely ministerial, and thus peripheral to the allegations underlying this suit.
 
 
 29
 Moreover, there is no evidence that the counties would attempt to enforce the challenged ordinance were the court to declare it unconstitutional. It appears that the counties even look with favor on appellants' development plans.
 
 
 30
 We conclude that it was not error to dismiss the suits as against the counties.
 
 
 31
 B. THE STATES.
 
 
 32
 California and Nevada were also joined as defendants, either on the theory that the TRPA was a political subdivision of the states, or alternatively that the zoning was a joint undertaking by the states and the TRPA. The district judges did not decide these issues, holding instead that any adjudication of condemnation would mean that the TRPA had exceeded the authority delegated to it and thus its actions would not be regarded as those of the states.[13]
 
 
 33
 We decide on another ground that the states are not proper parties.[14]
 
 
 34
 The Eleventh Amendment immunizes a state from suits brought in federal court by the state's own citizens as well as by citizens of a foreign state. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Although this is an immunity which the state may waive at its pleasure, the conclusion that there has been a waiver of immunity from suit will not be lightly inferred. Petty v. Tennessee-Missouri Bridge Com'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).
 
 
 35
 Relying on Petty, appellants allege that California and Nevada waived their immunity to suit by enacting the Compact. In Petty, Congress approved a compact between Tennessee and Missouri containing a clause giving the Commission the right "to sue and be sued." Appellants seem to consider this language analogous to certain language in the Compact.
 
 
 36
 The difference between Petty and this case is that in Petty Congress attached a proviso that proved critical to the Supreme Court's determination that the states had waived immunity to suit against the bi-state corporation. The Court observed that
 
 
 37
 (I)f there be doubt as to the meaning of the sue-and-be-sued clause in the setting of the compact prior to approval by Congress, the doubt dissipates when the condition (abrogating immunity) attached by Congress is accepted and acted upon by the two States.
 
 359 U.S. at 281-82, 79 S.Ct. at 790.[15]
 
 38
 Discussing Petty in Edelman v. Jordan, supra, the Supreme Court emphasized that
 
 
 39
 The question of waiver or consent under the Eleventh Amendment was found in (Petty ) to turn on whether Congress had intended to abrogate the immunity in question, and whether the State by its participation in the program authorized by Congress had in effect consented to the abrogation of that immunity.
 
 415 U.S. at 672, 94 S.Ct. at 1360.[16]
 
 40
 Appellants have pointed to no similar, express proviso attached by Congress when it approved the Compact. Thus, if there has been a waiver, it must be found in the language of the Compact itself.
 
 
 41
 At oral argument, counsel argued that Article VI(b) of the Compact constituted a waiver of immunity. Their attempt to draw an analogy between that provision and the sue-and-be-sued clause in Petty seems to us somewhat contrived. Article VI(b) provides, in part, that the TRPA will be deemed a political subdivision of both states for purposes of suit. When read in conjunction with Article III(a), which provides that the TRPA is a separate legal entity, it appears that Article VI(b) was intended only to operate as a grant of state court jurisdiction over the TRPA. The provision admittedly is not without ambiguity,[17] but since waiver should not be lightly inferred, Petty, 359 U.S. at 276, 79 S.Ct. 785, we hold that there was no waiver.
 
 
 42
 C. THE UNITED STATES.
 
 
 43
 The United States was named as a defendant in No. 76-1608. That case was originally instituted in the California Superior Court and was removed to the federal court. The district court dismissed the United States from the action, finding that the TRPA was not an agency of the United States.
 
 
 44
 There is no language in the Compact indicating that Congress gave its consent to allow suit against the United States. Without its consent, the United States cannot be sued. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).
 
 
 45
 Moreover, although Congress, in the Tucker Act, 28 U.S.C. §§ 1346, 1491 (1970), waived sovereign immunity for certain claims and granted jurisdiction over them to federal district courts and the Court of Claims, it did not subject the United States to suit in a state court. Appellants brought this suit in a state court. Since the state court lacked jurisdiction, federal courts acquired none upon removal, Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939), even where we would have had jurisdiction had the suit been commenced in the federal forum. Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922).
 
 
 46
 Finally, the United States has an extremely limited involvement with the Compact. First, Congress consented to it. Second, as a condition of that consent, Congress insisted that the President of the United States be allowed to appoint a single non-voting representative to the governing body. Pub. L. No. 91-148, Art. 8(d) § 3, 83 Stat. 360 (1969). We agree with the district court that the approval of the Compact by Congress and the limited appointment power of the President do not thereby establish the TRPA as an agency of the United States.
 
 
 47
 The district court properly dismissed the suit as against the United States.
 
 
 48
 D. THE EXECUTIVE DIRECTOR AND MEMBERS OF THE GOVERNING BOARD OF TRPA.
 
 
 49
 The individual members of the TRPA's Governing Board and its Executive Director[18] were named as defendants in No. 76-1289. They allegedly violated appellant's constitutional rights by enacting and implementing the General Plan and Land Use Ordinance. The district court dismissed the complaint as to these defendants,[19] holding that "members of governmental bodies are immune from liability for damages arising out of their exercise of discretionary functions."
 
 
 50
 Before addressing the immunity issue, we must examine the jurisdictional basis of the action against these defendants. Appellant alleged jurisdiction under two statutes, 28 U.S.C. §§ 1331 and 1343. Section 1343 is the jurisdictional statute for civil rights actions arising under 42 U.S.C. § 1983 (1970). In order to establish a claim cognizable under § 1983, appellant must show that he has been deprived of a right secured by the Constitution and that such deprivation was achieved under color of state law. Adickes v. Kress & Co., 398 U.S. 144, 94 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
 
 
 51
 In League to Save Lake Tahoe, 507 F.2d at 519-24, a case concerning the same bi-state Compact involved here, this court held that "(c)ongressional consent transforms the compact into a law of the United States." Since the challenged actions were taken by the individual officers pursuant to authority conferred by the Compact, the alleged deprivation of constitutional rights could not have been under color of state law.[20]
 
 
 52
 This court thus has no jurisdiction under § 1343, but appellant also relied on federal question jurisdiction under § 1331, which provided the jurisdictional basis for Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court in Bivens fashioned a cause of action against federal officers for a violation of the Fourth Amendment. The Court found a damages remedy implied in the Constitution, viewing it as an unsurprising remedy solidly rooted in history.[21]
 
 
 53
 Since appellant's claim is based on the Fifth, rather than the Fourth, Amendment, we must determine whether the rationale of Bivens can be extended to Fifth Amendment claims.
 
 
 54
 Although the question whether to limit the applicability of Bivens to the Fourth Amendment has apparently not been decided by this circuit,[22] most courts of appeals have held that the remedy is not so limited.[23]
 
 
 55
 We believe that this is the better view. The due process rights protected by the Fifth Amendment are as fundamental as those protected by the Fourth Amendment. Nothing in Bivens warrants limitation to Fourth Amendment claims; its rationale clearly supports extension to cases of this sort.
 
 
 56
 Having found jurisdiction under § 1331, we turn now to the immunity issue. We note at the outset that the major difference between a § 1983 claim and a Bivens claim is that, where the constitutional infringer has acted under color of state law, § 1983 is applicable and where the constitutional infringer acts under color of federal law, a Bivens action can lie. In Mark v. Groff, 521 F.2d 1376, 1380 (9th Cir. 1975), this court announced that
 
 
 57
 (W)e agree with several courts of appeals in holding that the official immunity doctrine in suits against federal officers for violation of constitutional rights is identical to the immunity doctrine applied in § 1983 suits. (Citations omitted.)
 
 
 58
 We thus turn to § 1983 law to determine the applicability and extent of the immunity doctrine as it relates to the officers of the TRPA. In dealing with the immunity doctrine, courts have established three functional classifications: judicial, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); executive, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); and legislative, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). We must determine which, if any, of the classifications applies to these appellees. We begin with an examination of the powers accorded them under the Compact.
 
 
 59
 To effectuate its purposes, the Compact mandated that "(w)ithin 90 days after the formation of the agency, the governing body shall adopt a regional interim plan" and that "(w)ithin 18 months after the formation of the agency, the governing body shall adopt a regional plan."[24]
 
 
 60
 Article VI of the Compact grants specified powers to the TRPA and its officers. Section (a) provides that "(t)he governing body shall adopt all necessary ordinances, rules, regulations and policies to effectuate the adopted regional and interim plans"; section (b) provides that "(a)ll ordinances, rules, regulations and policies adopted by the agency shall be enforced by the agency"; and section (e) provides that "(t)he agency shall police the region to ensure compliance with the general plan and adopted ordinances, rules, regulations and policies." In addition, Article V(c), and (f) grants the TRPA enforcement powers necessary to implement the interim plan and the regional general plan.
 
 
 61
 Thus, the agencies possess both legislative (adoption of ordinances, etc.) and executive (enforcement) powers. The immunity accorded to those acting in the different capacities is not identical.[25]
 
 
 62
 Absolute immunity is given to legislators for actions performed in their legislative function. Tenney v. Brandhove, supra; Doe v. McMillan,412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). Executive officers are given only a qualified immunity for their actions varying with "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time" in question. Scheuer v. Rhodes, 416 U.S. at 247, 94 S.Ct. at 1692. See also Navarette v. Enomoto, 536 F.2d 277 (9th Cir. 1976), cert. granted, 429 U.S. 1060, 97 S.Ct. 783, 50 L.Ed.2d 776 (1977) (No. 76-446); Mark v. Groff, 521 F.2d 1376 (9th Cir. 1975).
 
 
 63
 The problem in the present case is that we cannot tell from the state of this record whether the acts complained of arose by virtue of the officers' exercise of their legislative or executive powers. Because of our uncertainty on this issue, we remand to the district court for further factual development as to the nature of the challenged actions.
 
 
 64
 We do offer some guidelines for the district court on remand. We are fully aware that under § 1983 absolute immunity has been recognized only for state and federal legislators. Doe v. McMillan, supra. The question of immunity for officers acting under the authority of an interstate compact has not been squarely addressed, but we believe that such compacts, by their very nature, establish regional legislatures. In an area such as the Lake Tahoe Basin the legislature of either state could not deal effectively with problems that demand the consideration of a body which can weigh regional interests and wisdom.[26] We discern no reason why these "regional legislators" should not be accorded the same immunity as their state and national counterparts.
 
 
 65
 For parallel reasons, we also believe that these officers, as executives, might be given the same qualified immunity that the Court granted state executive officers in Scheuer v. Rhodes, supra. If the only complaint, as it relates to their executive function, is their enforcement of the challenged ordinance, such immunity would absolve the officers from liability. Therefore, appellant would have to show something more than an evenhanded enforcement by the defendants of an ordinance with which he disagrees.
 
 
 66
 More specifically, we think the guidelines found in Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1974), are applicable. The Court held that a school board member is not immune from liability for damages if
 
 
 67
 (h)e knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.
 
 
 68
 420 U.S. at 322, 95 S.Ct. at 1001.
 
 
 69
 Similar analysis has been employed in the land use context. In Cordeco Development Corp. v. Santiago Vasquez, 539 F.2d 256 (1st Cir. 1976), Cordeco owned commercially valuable dunes in Puerto Rico. Defendant officers of the Commonwealth took no action on Cordeco's petition for a permit to extract sand, while granting permits to an adjoining and politically influential landowner. The court upheld imposition of liability as to "these two defendants (because they) were not acting within the scope of their lawful discretion or authority in refusing to process Cordeco's application." Indeed, the court concluded that defendants had "acted maliciously and wantonly, and with illegitimate 'political' or, at least, personal motives . . . ."
 
 
 70
 It is this kind of showing which must be made to create liability under Bivens as to the executive director or governing board members of the TRPA, at least to the degree that they acted in their executive capacity. And, as already discussed, to the degree that they acted in their legislative capacity, they have an absolute immunity from suit.
 
 
 71
 We recognize that the executive director and members of the governing board face a difficult task in trying to regulate and control development in the Lake Tahoe Basin. By subjecting them to possible liability under Bivens we would hold them responsible for their actions being mindful, however, that they must have wide latitude in the responsible, good-faith exercise of their authority. By limiting their liability to instances such as those discussed in Wood v. Strickland and Cordeco Development Corp. v. Santiago Vasquez, we think that sincere, well-meaning officials need not fear the threat of suit.
 
 
 72
 The immunity afforded governmental officers for damage suits does not defeat a claim for equitable relief. Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732 (3d Cir. 1973). Appellant has asked for affirmative injunctive and declaratory relief against the officers. He asks the court to order the members of the governing board to repeal the existing ordinance and to enact a new ordinance permitting their proposed developments.
 
 
 73
 Principles of federalism counsel against such affirmative intrusion into the executive branch of an agency of state or local government. Rizzo v. Goode, 423 U.S. 362, 380, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Those principles apply with equal force to the TRPA, a hybrid regional body both legislative and executive in nature. Any equitable relief granted in this case must be limited to what is absolutely necessary to redress the appellant's rights. Under the doctrine of Ex parte Young, supra, prohibitory injunctive relief against the enforcing officers is allowed.[27] Declaratory relief may also be granted if it is limited so as not to interfere excessively with the TRPA's
 
 
 74
 "latitude in the 'dispatch of its own internal affairs.' "
 
 
 75
 Cafeteria Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), quoted in Sampson v. Murray, 415 U.S. 61, 83, 94 S.Ct. 937, 949, 39 L.Ed.2d 166 (1974), requoted in Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).
 
 V.
 JACOBSON'S STANDING
 
 76
 The district judge in No. 75-2400 dismissed Jacobson's suit for lack of standing. In bankruptcy proceedings initiated subsequent to enactment of the challenged ordinance, Jacobson's interest in the affected property was assigned to another entity.
 
 
 77
 Only the present owner of land has standing to ask for equitable relief setting aside the zoning of his land. Hence, although Jacobson claims that he "retained" this cause of action, he could only have retained a claim for monetary relief. Since the record does not support Jacobson's contention, a position contrary to general principles of bankruptcy law, we hold that the district court properly dismissed his suit for lack of standing.
 
 
 78
 The four cases reviewed are affirmed in part, reversed in part, vacated in part and remanded for further consideration consistent herewith.
 
 
 
 [1]
 Article I, § 10, cl. 3, of the United States Constitution provides in part:
 "No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State . . . ."
 
 
 [2]
 Compact, Art. VI(a)
 
 
 [3]
 TRPA Ordinance No. 4, § 7.20
 
 
 [4]
 Id. at § 7.30
 
 
 [5]
 Id. at § 7.110
 
 
 [6]
 See infra, p. 1359-1360
 
 
 [7]
 TRPA was given only the power to regulate, not the power to condemn. The statutory grant of the power of eminent domain must be indicated by express terms or by clear implication. Western Union Tel. Co. v. Penn. R. R., 195 U.S. 540, 569, 25 S.Ct. 133, 49 L.Ed. 312 (1904). See also Hudson Water Co. v. McCarter, 209 U.S. 349, 355, 28 S.Ct. 529, 52 L.Ed. 828 (1908); Atlantic Coast Line R. Co. v. North Carolina Corp. Comm'n, 206 U.S. 1, 20, 27 S.Ct. 585, 51 L.Ed. 933 (1907). The delegation of police power to TRPA was neither an express grant of condemnation power nor one by implication
 
 
 [8]
 It is not inconsistent to find that both the Fourteenth and Fifth Amendments can support a cause of action against the same defendants. As noted, this case concerns a bi-state compact, that "centaur of legislation" which is an offspring of both state and federal law. See Comment, "Federal Question Jurisdiction to Interpret Interstate Compacts," 64 Geo.L.J. 87, 110 (1975). The two causes of action, however, substantially overlap
 
 
 [9]
 Under the strict standard of pleading called for by Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935), none of the complaints in any of the cases on appeal would withstand a motion to dismiss. They lack specific factual allegations which, if proved, would rebut the presumption of constitutionality that the Pacific States Court accorded acts of administrative and legislative bodies
 Although Pacific States has never been explicitly overruled, we do not believe that it represents the present state of the law because it was decided two years before the promulgation of the Federal Rules of Civil Procedure. We find no precedent in the Ninth Circuit applying Pacific States to an analogous case since the Rules took effect.
 In Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Supreme Court explained the modern philosophy of pleading:
 "(A)ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . . The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."
 Id. at 47-8, 78 S.Ct. at 103 (citations omitted).
 Thus a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 2A Moore's Federal Practice P 12.08 (1975).
 The allegations of "taking," even though phrased in terms of inverse condemnation, are sufficient to show that appellants complained that the TRPA exercised its police powers improperly, and that they relied on the due process clauses of the Fifth and Fourteenth Amendments.
 
 
 [10]
 See generally, R. Leach & R. Sugg, Jr., The Administration of Interstate Compacts 22 (1959):
 "Agencies established by interstate compact are identified administratively with the party states rather than with the federal government. They may develop close relations with federal departments . . . but they are no more a part of the federal administrative organization than any ordinary department of a state government."
 
 
 [11]
 See infra, pp. 1361-1363
 
 
 [12]
 Since Jacobson is no longer the owner of property affected by the ordinance, the district court properly dismissed his equitable claims. See infra, p. 1366
 
 
 [13]
 See Western Int'l Hotels v. TRPA, 387 F.Supp. 429, 439 (D.Nev.1975)
 
 
 [14]
 This court may affirm on any ground squarely presented on the record. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); M. O. S. Corp. v. John I. Haas Co., 375 F.2d 614, 617 (9th Cir. 1967). The issue of the Eleventh Amendment as a bar to suing the states was raised by at least one party below
 Even had it not been, "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar" that it would be proper to consider it for the first time on appeal. See Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945). We believe that the Eleventh Amendment's jurisdictional nature also justifies our raising the issue sua sponte.
 
 
 [15]
 For evidence that there can be considerable doubt as to the meaning of a sue-and-be-sued clause, see the discussion in Petty, 359 U.S. 275, 283-89, 79 S.Ct. 785 (Frankfurter, J., dissenting)
 
 
 [16]
 See also League to Save Lake Tahoe v. TRPA, 507 F.2d 517, 523 & n.13 (9th Cir. 1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975)
 
 
 [17]
 Article VI(b) commands that suit should be brought in a court of the state where the violation was committed or where the property is located "unless the action is brought in a federal court." The reference to suit in a federal court admittedly is ambiguous, but we do not understand it to constitute a waiver of immunity. The phrase may refer to diversity suits or to suits by the TRPA against the United States under the Tucker Act. 28 U.S.C. §§ 1346, 1491 (1970)
 
 
 [18]
 For brevity, the executive director and members of the governing board will be referred to as "officers" of the TRPA
 
 
 [19]
 The suits against defendants Doug Leisz and Jack W. Deinema were dismissed voluntarily. C.T. 236-37
 
 
 [20]
 This is not inconsistent with our earlier finding of state action to support a cause of action under the Fourteenth Amendment. The jurisdictional standard under §§ 1983 and 1343 is that there must be a deprivation of constitutional rights "under color of state law." (Emphasis added.) While the TRPA exercises the power of the constituent states, it does so pursuant to federal law
 
 
 [21]
 403 U.S. at 395-96, 91 S.Ct. at 2004, quoting from Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946):
 "(I)t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."
 
 
 [22]
 In Mark v. Groff, 521 F.2d 1376, 1378 n.1 (9th Cir. 1975), the court noted that the question of a damages claim was not raised and the court chose to take no position on the question
 
 
 [23]
 The following cases have extended the applicability of Bivens, or have indicated that they look with favor on such an extension:
 Gagliardi v. Flint, 564 F.2d 112 (3rd Cir. 1977); Davis v. Passman, 544 F.2d 865 (5th Cir. 1977) (extending Bivens to cover Fifth Amendment due process); Rodriguez v. Ritchey, 539 F.2d 394 (5th Cir. 1976) (extending to cover investigatory officers who did not participate in the actual arrest); White v. Boyle, 538 F.2d 1077 (4th Cir. 1976) (retaliatory IRS investigation could give rise to a Bivens action); Paton v. La Prade, 524 F.2d 862 (3rd Cir. 1975) (First Amendment); Dry Creek Lodge, Inc. v. United States, 515 F.2d 926 (10th Cir. 1975) (favorable dictum); States Marine Line, Inc. v. Shultz, 498 F.2d 1146 (4th Cir. 1974) (customs officers liable for improper performance of duties Fifth Amendment due process); United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3rd Cir. 1972) (extended to Fifth Amendment fair trial rights); Butler v. United States, 365 F.Supp. 1035 (D.Hawaii 1973) (First Amendment); Washington v. Brantley, 352 F.Supp. 559 (M.D.Fla.1972) (favorable dictum).
 The following courts have limited Bivens to Fourth Amendment cases: Kostka v. Hogg, 560 F.2d 37 (1st Cir. 1977); Smothers v. Columbia Broadcasting System, 351 F.Supp. 622, 626 n.4 (C.D.Cal.1972); Davidson v. Kane, 337 F.Supp. 922 (E.D.Va.1972).
 The Second Circuit considers the question still open. Wahba v. New York University, 492 F.2d 96 (2nd Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). But see Brault v. Town of Milton, 527 F.2d 730, 734 (2nd Cir.), rev'd en banc on other grounds, 527 F.2d 736 (2nd Cir. 1975) (Fourteenth Amendment due process violation "comes within Bivens' sweeping approbation of constitutionally-based causes of action.").
 
 
 [24]
 Compact, Art. V(b) & (d)
 
 
 [25]
 E. g., Thomas v. Younglove, 545 F.2d 1171 (9th Cir. 1976). We presume that the executive director acted only in an executive capacity. The more complicated question involves only members of the governing board
 
 
 [26]
 See, Frankfurter & Landis, The Compact Clause of the Constitution A Study in Interstate Adjustments, 34 Yale L.J. 685 (1925):
 "Legislation is the answer and legislation must be coterminous with the region requiring control. . . . The regions are less than the nation and are greater than any one state. The mechanism of legislation must therefore be greater than that at the disposal of a single state."
 
 
 [27]
 See supra, pp. 1360-1361