MARUYAMA & ASSOCIATES, LTD.,      )      CIVIL ACTION NO. 82-0066
                                   )
            Plaintiff,             )
                                   )
        vs.                        )           DECISION
                                   )
MARIANA ISLANDS HOUSING            )
AUTHORITY and SUMITOMO             )
CORPORATION,                       )
                                   )
            Defendants.            )
_____  )

Plaintiff filed a Complaint on November 22, 1982 against Mariana Islands Housing Authority (MIHA) for breach of contract (Count I) and for violation of rights of Due Process and Equal Protection (Count II) and against Sumitomo Corporation (Sumitomo) for interference with contract (Count III); Plaintiff seeks injunctive and monetary relief.

On February 18, 1983, Sumitomo filed its Motion to Dismiss or, in the alternative, for Summary Judgment.

On February 23, 1983, MIHA filed its Motion for Summary Judgment, in which it also joined Sumitomo in its motions.

Plaintiff filed its Memorandum in Opposition to the motions of the Defendants on June 17, 1983.

Having heard the arguments and considered the memoranda of the parties, and for the reasons stated herein, the Court grants partial Summary Judgment for MIHA only as to Count I of Plaintiff's Complaint; the remaining motions are denied.

## I.  FACTUAL BACKGROUND

MIHA was established by the Congress of Micronesia[1] for the purpose of providing safe, sanitary and decent housing for the people of the Mariana Islands.[2] It was given general corporate powers, including the authority to enter into and execute contracts.[3] MIHA exists today as an agency of the Commonwealth of the Northern Mariana Islands (CNMI).

Plaintiff alleges in Count I that, in early 1982, it began negotiations with MIHA for the construction of a 300-house "turn-key" project to be located in the area on and around Kobler Field, also known as "Koblerville", Saipan.  Plaintiff contends that MIHA entered into an agreement, 'memorialized' in a letter from MIHA Executive Director to Plaintiff on May 11, 1981,[4] whereby Plaintiff would design and construct six model homes for MIHA.

_ _ _ _ _ _ _ _ _

[1] 46 Trust Territory Code (TTC) § 6.

[2] 46 TTC § 1.

[3] 46 TTC § 6(5).

[4] Plaintiff's Complaint, paragraph 5.

In addition, Plaintiff alleges that MIHA was to refrain from negotiating with other interested parties for a period of sixty days beginning on May 11, 1982.[5]

The agreement of May 11, 1982 was allegedly breached when MIHA entered into negotiation with Sumitomo, the result of which was the award of the contract to Sumitomo to construct the 300-home project. Plaintiff seeks relief on a claim against MIHA for breach of contract.

MIHA disputes Plaintiff's reading of the May 11, 1982 letter. The sixty-day period was to begin "after the completion of the homes." MIHA argues that even if this letter can be considered to form the basis of a valid contract, the sixty-day clause never become effective since the six model homes were never constructed. MIHA, therefore, seeks summary judgment on Count I.

In addition, Plaintiff alleges that, after learning of MIHA's refusal to "go forward with its agreement concerning the construction of said six model homes," it was informed by MIHA that Plaintiff was still the sole party with whom MIHA would negotiate a contract for the construction of the entire project.

— — — — — — — — —

[5] The relevant portions of the May 11th letter read:

"9. Within sixty days after the completion of the homes, the consortium [Plaintiff] will submit to MIHA a proposal to construct 300 homes under a turn-key type arrangement.

10. MIHA promises that during the sixty-day period it will not enter into negotiations with any other party for the construction of the 300 homes."

In reliance on these representations, Plaintiff "performed further architectural and engineering studies [and] incurred legal fees and other related expenses." The contract, however, was eventually awarded to Sumitomo and Plaintiff now seeks monetary damages.

MIHA submits that it at no time told Plaintiff that it alone was being considered. Any expense incurred by Plaintiff was undertaken during preliminary negotiations, subjecting MIHA to no legal liability.

In Count II, Plaintiff alleges that, on or about May 11, 1982, MIHA solicited bids for the construction of the 300-house turn-key project; the solicitation was accompanied by a "Scope of Work" with which bidders were required to comply and in accordance with which the contract would be awarded; that the solicitation was "a sham" as MIHA had previously determined that Sumitomo would be awarded the contract, and that it did decide to award the contract to Sumitomo the day before the MIHA board meeting at which the bids were to be reviewed.

Based on the foregoing, Plaintiff alleges that its rights to Due Process and Equal Protection as guaranteed by the Constitutions of the United States and of the NMI were violated.

MIHA responds that it is not required by law to solicit bids for public contracts nor to award contracts to the lowest bidder, · MIHA concedes that it did advertise for bids;[6] however, MIHA contends that its decision on the award was within its

— — — — — — — — —

[6] MIHA's Motion for Summary Judgment, p.7.

absolute discretion. In addition, it asserts that, in fact, it did consider all proposals fairly. Lastly, MIHA argues that even had it acted maliciously, such actions would not give rise to a cause of action by Plaintiff.

In Count III, Plaintiff seeks injunctive and monetary relief against Sumitomo for interference with contract. Plaintiff avers that Sumitomo was aware of Plaintiff's contractual relationship with MIHA and "through a planned program utilizing wrongful and unethical means, undertook to convince MIHA to terminate its relationship with Plaintiff." These actions enabled the turn-key project to be awarded to Sumitomo. Sumitomo denies that Plaintiff had any contractual relationship with MIHA.

Sumitomo argues that Plaintiff has failed to demonstrate that MIHA breached a contract, the first element required in Plaintiff's case. Sumitomo contends that no contract existed because (1) MIHA's Executive Director had no legal authority to enter into a valid contract or, (2) the contract is void and unenforceable because it violates public policy. Alternatively, Sumitomo asserts that, assuming a valid contract is found to exist, the contract was not breached as the sixty-day clause never became operative because of the failure of a condition precedent (the completion of the model homes) or (2) the prohibition in the letter of May 11, 1982 prohibits MIHA from entering into negotiations whereas negotiations between Sumitomo and MIHA were ongoing since December of 1981. For these reasons, Sumitomo seeks summary judgment on Count III.

## II. STANDARD OF REVIEW

The Court has considered affidavits and other extra-pleading material submitted by the parties. Under Rule 12(b), the 12(b)(6) motion converts to one for summary judgment. The Court accordingly treats Defendants' motions as motions for summary judgment.

Summary judgment is appropriate only if no material factual issues exist and the movant is entitled to judgment as a matter of law. United States v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence and its attendant inferences most favorably to plaintiff. Harlow v. Fitzgerald, ___ U.S. ___, ___, n.26, 102 S.Ct. 2727, 2737, n.26, 73 L.Ed.2d 396, 409, n.26 (1982). A genuine factual issue may exist only if a viable legal theory would entitle plaintiff to judgment if it proves its asserted version of the facts. Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert. denied 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

///
///
///
///
///
///
///
///

III.  ANALYSIS

A. Count I - Breach of Contract

Plaintiff relies on the sixty-day exclusive negotiation clause to support its claim for breach of an express contract. The language of the clause is clear;[7/] the sixty-day clause does not become operative until "after the completion of the homes." The completion of the homes is a condition precedent.  A condition creates no right or duty in itself, but is merely a limiting factor and if it is breached or does not occur, the promisee acquires no right to enforce the promise.  United States v. Schaeffer, 319 F.2d 907 (9th Cir. 1963), cert.denied, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767.  Plaintiff concedes that the homes were not built; therefore, no enforceable express contract exists between Plaintiff and MIHA.[8/]

Plaintiff includes an additional claim in Count I:

"10.  Thereafter, MIHA informed Plaintiff on numerous occasions that the consortium of which Plaintiff was a member were the sole parties with whom a contract would be negotiated...

12.  ... MIHA... wilfully continued to mislead Plaintiff so that Plaintiff would, at its expense, provide for legal, architectural and engineering services that would be of benefit to MIHA."

_ _ _ _ _ _ _ _ _ _

[7/]See, n.5, supra.

[8/]Because the Court disposes of this issue in this manner, it is not necessary to address the other issues raised by the parties regarding the validity of the contractual agreement.

Plaintiff is essentially asserting a claim in quasi-contract although it has not labelled it as such. The Federal Rules have abandoned adherence to the strict requirements of "code pleading" and have adopted "notice pleading." The Supreme Court explained in Conley v. Gibson:

> [A]ll the Rules require is "a short and plain statement of the claim [footnote omitted]that will give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests.

355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957).

The Ninth Circuit elaborated in Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353 (9th Cir. 1977); aff'd in part, rev'd.in part, 440 U.S. 391, 99 S.Ct. 1171, 11 L.Ed.2d 767 (1978),

> Thus a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

566 F.2d at 1359, n.9.

In order for Plaintiff to recover under a theory of quasi-contract, it must show that MIHA was unjustly enriched at the Plaintiff's expense and that the circumstances are such that MIHA should be required to make restitution. Bloomgarden v. Coyer, 479 F.2d 201 (D.C.Cir. 1973). The D.C. Circuit continues:

> Thus, to make out his case, it is not enough for the plaintiff to prove merely that he has conferred an advantage upon the defendant, but he must demonstrate that retention of the

> benefit without compensating the one
> who conferred it is unjustified.  Id.
> at 211.

Has Plaintiff made a sufficient showing of its claim in quasi-contract or has it demonstrated its capability of doing so at trial?  The Court does not believe that it has.  Plaintiff presented no evidence, either through affidavits or documents, which tends to show that MIHA used any data submitted by Plaintiff in the planning of the turn-key project; much less has Plaintiff showed that MIHA intentionally solicited Plaintiff's bid for subsequent use by MIHA.  In addition, Plaintiff appears to retreat from this argument in its memorandum.  See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p.4.

The Court finds no breach of an express contractual agreement, nor is there any evidence to support a claim based on a theory of quasi-contract; accordingly, MIHA's motion for summary judgment as to Count I is granted.

B. Count II - Due Process and Equal Protection

Plaintiff seeks injunctive and monetary relief for the alleged deprivation of its due process rights[9] through MIHA's failure to follow its stated bid procedures and in awarding the contract which deviated substantially from MIHA's "Scope of Work." Besides asserting as a defense that it is not required to solicit bids or to award a contract based on its "Scope of Work," MIHA

— — — — — — — — — —

[9] We do not assess here the merits of Plaintiff's request for injunctive relief or any potential defenses which may be made thereto.

contends that it considered all proposals fairly. The fact that MIHA solicited bids raises a disputed factual issue of substantia import, namely, that of fair consideration to all proposals submitted to MIHA, thus preventing the grant of summary judgment on this issue.

C. Count III - Interference with Contract

In Count III, Plaintiff alleges that Sumitomo caused MIHA to breach its contract with Plaintiff. Sumitomo denies the existence of an enforceable contract between Plaintiff and MIHA and argues, therefore, that there can be no breach. Sumitomo cit Restatement of Torts, 2d, § 766 in support of its position.[10]/

Sumitomo's argument is well taken, as far as it goes. As we find that there existed no express contract between Plainti and MIHA, we agree that Sumitomo cannot be held Liable for inter- ference with an existing contract. However, Plaintiff alleges in paragraph 28 of its complaint, that "Sumitomo further, through a planned program utilizing wrongful and unethical means, undertook to convince MIHA to terminate its relationship with Plaintiff..." Plaintiff does not strictly limit itself to an existing express

— — — — — — — —

[10]/The rules of common law, as expressed in the restatements of law approved by the American Law Institute apply in the CNMI. 1 TTC § 103. Restatement of Torts, 2d, § 766 reads:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

contract, but refers to the interference with a <u>relation</u>.

Restatement of Torts, 2d, § 766B is the operative section. It reads:

§ 766B.   Intentional Interference with
Prospective Contractual Relation

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:

(a)   inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b)   preventing the other from acquiring or continuing the prospective relation.

Plaintiff has presented evidence to support its allegations that Sumitomo may have caused MIHA not to enter or continue the <u>prospective</u> relation with Plaintiff.  In other words, although Sumitomo did not cause MIHA to breach an existing contract, it may have persuaded MIHA not to <u>enter into</u> the contractual relationship; if Plaintiff can so prove, Sumitomo may have committed an actionable wrong.  If Sumitomo prevails in its denial of any knowledge of a prospective contractual relationship or an intentional intereference thereof, then there would be no actionable wrong.

The state of the record on this motion indicates the existence of disputed facts.  Both parties should be given a chance to prove their respective allegations at trial; accordingly, Sumitomo's motion for summary judgment is also denied.

## IV.  CONCLUSION

For the foregoing reasons, MIHA's motion for summary judgment as to Count I is granted.  MIHA's motion as to Count II and Sumitomo's motion as to Count III are denied.

DATED this _16_ day of _October_, 1983.

_____
ALFRED LAURETA
District Judge