547 F.2d 1072
 LEAGUE TO SAVE LAKE TAHOE, a non-profit corporation, James
L. Porter, Jr., Plaintiffs-Appellants,
v.
B.J.K. CORPORATION, a Nevada Corporation and County of
Washoe, a political subdivision of the State of
Nevada, Defendants-Appellees.
 No. 75-2516.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 8, 1976.
Rehearing En Banc Denied March 3, 1977.
 
 Coleman A. Blease (argued), of Karlton, Blease & Vanderlaan, Sacramento, Cal., for plaintiffs-appellants.
 Paul A. Bible (argued), of McDonald, Carano, Wilson, Bergin & Bible, Reno, Nev., Larry D. Lessly, Deputy Dist. Atty. (argued), of Reno, Nev., for defendants-appellees.
 Before MERRILL and HUFSTEDLER, Circuit Judges, and KING,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 This appeal is a sequel to League to Save Lake Tahoe v. Tahoe Regional Planning Agency (9th Cir. 1974) 507 F.2d 517. The issue is whether this suit arising under the Tahoe Regional Planning Agency's ("TRPA") Land Use Ordinance raises a federal question permitting the League to invoke federal question jurisdiction. The district court dismissed the suit for lack of subject matter jurisdiction. We reverse because the suit raises serious issues that affect the effective functioning of the Tahoe Regional Planning Compact ("Compact").
 
 
 2
 The Compact was adopted in 1969, and in March, 1970, the TRPA was convened. Sometime in 1969, or 1970, the predecessors in interest to defendant B.J.K. Corporation applied to defendant Washoe County for a building permit. The corporation sought to construct a 15-story, 274-room hotel on the edge of Lake Tahoe adjacent to the stateline at North Lake Tahoe, Nevada. The building permit was granted on September 10, 1970, and construction commenced. At some point before 1972, construction was abandoned, with only the garage portion of the structure completed. On April 11, 1972, the TRPA Land Use Ordinance became effective. This ordinance included a "grandfather clause" that exempted existing uses including projects "upon which construction has commenced as allowed by . . . permit prior to February 10, 1972." (Tahoe Regional Planning Agency, Ord. 4 § 9.11.) However, the exemption does not apply "(i)f any such use ceases for a period of one (1) year." (Id.) The building permit was renewed on June 5, 1972, January 4, 1974, and January 2, 1975. Shortly after B.J.K. undertook to resume construction in May, 1975, this action was filed.
 
 
 3
 Plaintiffs alleged both violations of the TRPA Land Use Ordinance and, as a pendent claim, violations of the Washoe County Uniform Building Code. The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1331(a), and plaintiffs appeal. On appeal they urge three theories of jurisdiction: (1) that their case falls directly under League to Save Lake Tahoe, supra, because construction and enforcement of the Compact is an essential element of their claims; (2) that construction of the Land Use Ordinance presents a federal question; and (3) that enforcement of the Ordinance raises issues of federal common law.
 
 
 4
 The starting point for our analysis is League to Save Lake Tahoe v. Tahoe Regional Planning Agency (9th Cir. 1974) 507 F.2d 517, in which we held that the Tahoe Compact is a "law of the United States" within the meaning of Section 1331(a) by virtue of the congressional consent to that compact. (See Comment, "Federal Question Jurisdiction to Interpret Interstate Compacts"64 Geo.L.J. 87 (1975).) Questions arising under the TRPA Land Use Ordinance enacted pursuant to the Compact do not automatically give rise to Section 1331(a) jurisdiction, because the Compact is not an ordinary federal statute and the Ordinance is not directly analogous to the Code of Federal Regulations. Interstate compacts occupy a unique position in our federal system.[1]
 
 
 5
 Consent to an interstate compact (U.S.Const. Art. 1, § 10, cl. 3) is a way station on the road to exercise of congressional power under the commerce clause. (Id. Art. 1, § 8, cl. 3.) By permitting a state-initiated response to regional matters, Congress has done something quite different from incorporating a state law into a federal statute or from enacting a federal regulatory statute. (Frankfurter & Landis, supra, at 718.) The very diversity among types of compacts[2] alone suggests a more detailed approach.
 
 
 6
 Under the "well-pleaded complaint" rule, federal question jurisdiction exists only where the plaintiff would be required to plead and prove a proposition of federal law to win a default judgment. (Smith v. Kansas City Title & Trust Co. (1921) 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Louisville & Nashville R.R. v. Mottley (1908) 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126. See generally Cohen, "The Broken Compass: The Requirement that a Case Arise 'Directly' Under Federal Law" (1967) 115 U.Pa.L.Rev. 890.) Here, the plaintiffs' allegedly federal claim requires only proof of the proposition that B.J.K.'s use lapsed and is subject to the plan by virtue of § 9.11 of the Land Use Ordinance. The grandfather clause in the Compact (Pub.L. No. 91-148, Art. VI(a)(1), (2), 83 Stat. 360, 366-67 (1969)) refers to uses and permits extant on February 5, 1968, and thus does not govern the events at issue here which occurred in 1969, or later. The plaintiffs' first theory of jurisdiction is inapplicable because no interpretation of the Compact is involved.
 
 
 7
 In addition to the well-pleaded complaint rule, federal question jurisdiction is available only when the claim arises "directly" under federal law. (Gully v. First National Bank (1936) 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed. 70; Cohen, supra, at 903-05.) In determining which disputes contain federal issues that are "basic" and not "collateral" and that are "necessary" and not "merely possibl(y)" at issue, it has been suggested that pragmatic considerations be utilized. (13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3562 (1975); Cohen, supra, at 905-16.) We think the same considerations are relevant in deciding when construction of the Land Use Ordinance itself presents a federal question.[3]
 
 
 8
 The most important pragmatic considerations in this case are whether interstate conflicts in the interpretation and application of the Ordinance may arise that may substantially affect the effective functioning of the Compact and whether, absent a federal trial forum, existing judicial mechanisms supply a practical means for resolving such conflicts. If exclusive jurisdiction to interpret and to apply the Ordinance rests in the state courts of Nevada and California, we think that conflicting interpretations are inevitable. The legal questions that can be posed, including those in the case at bar, are knotty; reasonable judicial minds can be expected to differ in resolving them. Moreover, the history of the Compact and the Ordinance reveals that California and Nevada do not have identical views about the appropriate scope of land use regulation. In simplistic terms, California tends to favor strict controls, and Nevada is less inclined to inhibit development.[4] To be sure, not every interpretation or application of the Ordinance would generate conflict, and not every conflict would involve questions of such substantiality that differing decisions by the courts of Nevada and California would impair the effective administration of the regional plan. But when a conflict develops over a substantial question, we have no judicial mechanism that can be invoked to resolve conflict. If the questions are deemed not federal enough to permit access to the federal district court in the first instance, it is difficult to find a path to the Supreme Court after a conflict has developed between the state courts of last resort.[5]
 
 
 9
 Even if certiorari jurisdiction were expanded to encompass such questions, resort to the Supreme Court is impractical.[6] Increased access to the Supreme Court which is seriously overburdened cannot be justified absent compelling necessity. That necessity does not exist when the problem can be resolved by permitting access to the lower federal courts using Section 1331(a) (1) jurisdiction.
 
 
 10
 We hold that questions concerning the interpretation and application of TRPA ordinances present federal questions under Section 1331(a).[7] Differing interpretations by state courts of the impact of the grandfather clause on lapsed use or on interrupted construction of highrise buildings in the Tahoe basin could impair the effectiveness of the regional plan.
 
 
 11
 There may be future controversies involving the interpretation and application of TRPA ordinances that have little or no impact on the regional plan. Whether the district courts under such circumstances can abstain from exercising federal jurisdiction in favor of state court resolution of the issues is a question that for decision can await the event.
 
 
 12
 Because we find the plaintiffs' second theory of jurisdiction applicable on the facts of this case, we do not reach the issue of jurisdiction premised on questions of federal common law.[8]
 
 
 13
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 See generally R. Leach & R. Sugg, The Administration of Interstate Compacts (1959); Frankfurter & Landis, "The Compact Clause of the Constitution A Study in Interstate Adjustments" (1925) 34 Yale L.J. 685, 694, 718; Engdahl, "Construction of Interstate Compacts: A Questionable Federal Question," (1965) 51 Va.L.Rev. 987; Engdahl, "Characterization of Interstate Arrangements: When is a Compact Not a Compact?," (1965) 64 Mich.L.Rev. 63
 
 
 [2]
 See, e. g., Grad, Federal-State Compact: A New Experiment in Cooperative Federalism," (1963) 63 Colum.L.Rev. 825. See generally Frankfurter & Landis, supra note 1, at Appendix
 
 
 [3]
 The case arises directly under the Ordinance, and the only issue is the threshold inquiry whether the Ordinance is a "law of the United States" within the meaning of 28 U.S.C. § 1331(a)
 
 
 [4]
 E. g., Note, "Regional Government for Lake Tahoe," 22 Hastings L.J. (1971) 705, 713-14 (agency proposed by Nevada legislation provided for less control and enforcement)
 
 
 [5]
 The present case is a good example of this difficulty. Because the dispute is among private parties and a local municipality, original Supreme Court jurisdiction over disputes between the States is not available. 28 U.S.C. § 1251(a)(1)
 
 
 [6]
 See generally 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 3507, 3510 (1975); Mishkin, "The Federal 'Question' in the District Courts," (1953) 53 Colum.L.Rev. 157
 
 
 [7]
 Of course, state courts have concurrent jurisdiction over Section 1331 suits, but in deciding these cases the state courts must apply federal law
 
 
 [8]
 We express no views on the hypothetical questions raised in the briefs on appeal concerning the application of various federal laws (e. g., Federal Tort Claims Act) to the TRPA and to the regional plan