**LAKESIDE COMMUNITY HOSPITAL, a nonprofit corporation, and Careage Corporation, a Washington Corporation, Plaintiffs,**

v.

**TAHOE REGIONAL PLANNING AGENCY, and Joe Bensinger, Jim Henry, Thomas Stewart, Norman Woods, Ken Kjer, Jean Stoess, Thomas Cooke, Ken Woodward, John Meder, Bill Morgan, members of the Governing Board, and Jim Jordan, Executive Director, Defendants.**

Civ. No. 78–0098 BRT.

United States District Court,
D. Nevada.

Dec. 12, 1978.

Lyle & Robb, Robert E. Lyle, Reno, Nev., for plaintiffs.

Owen & Ralston, Gary A. Owen, Zephyr Cove, Nev., for defendants.

## ORDER

BRUCE R. THOMPSON, District Judge.

This case raises new questions regarding the role the federal courts are to play in reviewing Tahoe Regional Planning Agency (TRPA) action.[1] The plaintiffs, Lakeside Community Hospital and Careage Corporation, are private parties who wish to construct and operate a thirty-bed hospital at Incline Village, Nevada. They have sought and received approval for the project from the Nevada Comprehensive Health Planning Agency, as well as from the Washoe County Commission, to whom application was made for an administrative permit and for a rezoning of the property from an industrial to a commercial use classification. After conducting two public hearings, the Governing Board of the TRPA failed to approve the project, with the Nevada delegation voting against and the California delegation splitting 2–2 on the motion to approve. A motion to deny the project without prejudice, pending completion by the TRPA of its Non-Attainment Air Quality and General Up-Date Plans, was made and carried a dual majority. Those plans, aimed at meeting federal air quality standards in the Tahoe Basin and revising the existing regional plan, are slated for completion in January, 1979.

The complaint seeks damages from the TRPA, its executive director and the ten members of its Governing Board, as well as a declaration that the Board failed to take "final action" on the plaintiffs' application within 60 days of its submission, rendering

---

1. The Ninth Circuit has rendered four principal decisions concerning the TRPA: *Jacobson v. TRPA*, 566 F.2d 1353 (1977), *cert. granted sub nom., Lake Country Estates, Inc. v. TRPA*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); *League to Save Lake Tahoe v. B.J.K. Corp.*, 547 F.2d 1072 (1976); *People ex rel. Younger v. TRPA*, 516 F.2d 215 (1975), *cert. denied* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975); *League to Save Lake Tahoe v. TRPA*, 507 F.2d 517 (1974), *cert. denied* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).

the project "deemed approved" under Article VI(k) of the Compact, Cal.Gov't Code §§ 66800 et seq. (West Supp.1978), Nev. Rev.Stat. 277.190 et seq.[2] Four separate claims for relief are alleged. The first proceeds from the premise that a denial without prejudice constitutes a failure to take "final" action under Article VI(k), and charges the TRPA with exceeding its statutory authority in deeming such action final. The second alleges that the TRPA departed from its Rules of Practice and Procedure by failing to base its denial on substantial evidence that the project would run afoul of existing ordinances and plans, as assertedly is required by sections 7.10 and 8.3 of the agency's Rules.[3] The third and fourth claims are constitutional in nature, alleging a denial of due process and equal protection in that several of the Board members entertained an impermissible bias against plaintiffs, and further, that the denial was so lacking in evidentiary support as to render the action arbitrary and capricious. The defendants have filed motions alternatively to dismiss, to abstain, for a more definite statement or to strike.

■ At the outset it should be emphasized that this Court is duty bound to follow the law as articulated by the Court of Appeals for this Circuit. See, e. g., Jorgenson v. Swope, 114 F.2d 988, 989 (9th Cir. 1940). That a writ of certiorari has issued from the United States Supreme Court to the Court of Appeals does not relieve this Court of that duty. Derby v. Univ. of Wis., 54 F.R.D. 599 (E.D.Wis.1972), aff'd mem., 489 F.2d 757 (7th Cir. 1973); In re Simon Weltman & Co., 2 F.2d 759 (S.D.N.Y.1924) (per

Learned Hand, J.). Inasmuch as Jacobson v. TRPA, 566 F.2d 1353 (9th Cir. 1978), cert. granted sub nom., Lake Country Estates, Inc. v. TRPA, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978), squarely holds that the TRPA enjoys complete Eleventh Amendment immunity, its motion to dismiss should be granted. The Jacobson decision makes it equally clear that the immunity of the Executive Director and Board members depends on their good faith and whether they were acting in executive or legislative capacities, questions ordinarily deserving of factual development. Since dismissal on the basis of immunity would thus be inappropriate with respect to these defendants at this time, the remaining issues shall be addressed as to them.

■ The plaintiffs' first claim to relief plainly seeks a construction of the Compact and thus "arises under" the "laws" of the United States for purposes of invoking federal question jurisdiction under 28 U.S.C. § 1331. League to Save Lake Tahoe v. TRPA, 507 F.2d 517 (9th Cir. 1974), cert. denied 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). Federal question jurisdiction cannot be defeated by a plea denying the merits of the claim. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913). Nonetheless, dismissal is appropriate "when the allegations of the complaint clearly demonstrate that plaintiff does not have a claim." Wright & Miller, Federal Practice & Procedure: Civil § 1357 at p. 604 (West 1969).

■ The plaintiffs' argument, that a denial without prejudice does not amount to

**2.** Article VI(k) of the Tahoe Regional Planning Compact provides as follows:

Whenever under the provisions of this article or any ordinance, rule, regulation or policy adopted pursuant thereto, the agency is required to review or approve any proposal, public or private, the agency shall take final action, whether to approve, to require modification or to reject such proposal, within 60 days after such proposal is delivered to the agency. If the agency does not take final action within 60 days, the proposal shall be deemed approved.

**3.** Section 7.10 of Rules and Regulations of Practice and Procedure of the Tahoe Regional Planning Agency provides as follows:

A decision or order by the Agency governing body concerning disposition of any permit, proposal or application considered by it shall be in writing or stated in the record. Such decision or order shall be based upon substantial evidence.

Section 8.3 provides:

Decisions on applications shall be to approve, deny or approve with conditions as may be deemed necessary, in order to implement and enforce the Agency's plans and ordinances. Conditions also may include the obtaining of approvals of permits from other federal, state, or local agencies, as may be required by law before the Agency permits become effective.

"final action," has a certain semantic appeal. However, the reference in Article VI(k) to "final action" must be read in light of the highly technical definition given the term "take action" in Article III(g) of the Compact, requiring a dual majority of each state's delegation for the Governing Board to "act."[4] As the agency charged with developing and enforcing minimal land use standards applicable throughout the Lake Tahoe Basin, the TRPA possesses wide discretion, in the exercise of which it is entitled to considerable deference by this Court. *See People ex rel. Younger v. TRPA*, 516 F.2d 215 (9th Cir. 1975), *cert. denied* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975). The complaint itself reveals that the TRPA staff was concerned with the impact the plaintiffs' project would have on the air quality in the Basin. To hold that the TRPA lacks the authority, by dual majority vote, to deny an application without prejudice pending completion of a comprehensive air quality plan would seriously impair the flexibility required in the discharge of its responsibilities. Indeed, to the extent Article VI(k) provides that "the agency shall take final action, whether to approve, *to require modification* or to reject," (emphasis added) such flexibility seems, at least by analogy, to be expressly contemplated by the Compact. Accordingly, plaintiffs' first cause of action shall be dismissed for the reason that it fails to set forth an actionable claim, Fed.R.Civ.P. 12(b)(6).

Plaintiffs' second and fourth causes of action are closely related. Each seeks evidentiary review of the Board's decision and each does so on the basis that, absent evidence improperly admitted and considered, the decision was without adequate evidentiary support. The second claim to relief apparently seeks its jurisdictional predicate in *League to Save Lake Tahoe v. TRPA, supra,* and *League to Save Lake Tahoe v. B.J.K. Corp.,* 547 F.2d 1072 (9th Cir. 1976).

Thus, it is alleged that plaintiffs' project met existing air quality standards and therefore that the cause of action "arises under" sections 7.10 and 8.3 of the agency's Rules of Practice and Procedure, requiring respectively that agency action be based upon "substantial evidence" and be aimed at "implement[ing] and enforc[ing] the Agency's Plans and ordinances." In their fourth cause of action, by contrast, the plaintiffs seek to proceed in *Bivens* fashion (*Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) directly under the Fourteenth Amendment, *see Jacobson v. TRPA, supra.* That claim alleges, in apparent contradiction to the second, that the sole basis for the agency's decision was evidence pertaining to the lack of community need for a medical facility, evidence which, as an agency limited to environmental concerns, the TRPA should have shunned.

Traditionally, federal court review of local zoning decisions has been extremely limited. *See, e. g., Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). This has been held true even though the zoning board function at issue involves reclassification of a piece of property under an existing plan rather than the adoption of a comprehensive zoning plan. *See South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir. 1974) (en banc), *cert. denied* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). Only in cases arising in the District of Columbia, where the courts are statutorily vested with the authority to review decisions of the District of Columbia Zoning Board, do the federal courts engage in more rigorous review of the evidentiary findings of local zoning boards. *Cf. Hot Shoppes, Inc. v. Clouser,* 231 F.Supp. 825 (D.D.C.1964), *aff'd mem.,* 120 U.S.App.D.C. 353, 346 F.2d 834 (1965).

---

4. Section III(g) of the Tahoe Regional Planning Compact provides:

A majority of the members of the governing body from each state shall constitute a quorum for the transaction of the business of the agency. A majority vote of the members present representing each state shall be required to take action with respect to any matter. The vote of each member of the governing body shall be individually recorded. The governing body shall adopt its own rules, regulations and procedures.

Of course, this case is somewhat unique, involving that "centaur of legislation," (*Jacobson v. TRPA, supra,* footnote 8) the bi-state compact. The question before this Court, therefore, is the scope of federal court review of the evidentiary rulings and findings of the TRPA. It is by now well-established that cases seeking a construction of the Compact, *League to Save Lake Tahoe v. TRPA, supra,* and even, in some instances, of an ordinance enacted pursuant to Compact authority, *League to Save Lake Tahoe v. B.J.K. Corp., supra,* "arise under" federal law and thus present "federal questions." However, the Court in *B.J.K.* was careful to limit its extension of the jurisdictional principle articulated in *League to Save Lake Tahoe v. TRPA:*

> "Questions arising under the TRPA Land Use Ordinance enacted pursuant to the Compact do not automatically give rise to Section 1331(a) jurisdiction, because the Compact is not an ordinary federal statute and the Ordinance is not directly analogous to the Code of Federal Regulations. Interstate compacts occupy a unique position in our federal system."

547 F.2d at 1073 (footnote omitted). Thus, the Court in *B.J.K. Corp.* reached its conclusion that construction of the "grandfather clause" in the Land Use Ordinance presented a federal question only after evaluating "whether interstate conflicts in the interpretation and application of the Ordinance may arise that may substantially affect the effective functioning of the Compact and whether, absent a federal trial forum, existing judicial mechanisms supply a practical means for resolving such conflicts." 547 F.2d at 1074; *See,* Cohen, The Broken Compass: The Requirement that a Case "Arise Directly" Under Federal Law, 115 U.Pa.L. Rev. 890 (1967).

The plaintiffs have alleged that section 8.3 of the TRPA Rules of Practice and Procedure limits agency review of projects to *existing* ordinances and plans, rendering the denial without prejudice pending completion of the Non-Attainment Air Quality and General Up-Date Plans improper. Differing interpretations of that section could well embroil the TRPA in the difficult task of trying to adjust its operations to conflicting state court decisions. Accordingly, plaintiffs' second claim to relief is deemed to present a federal question.

As a matter of federal statutory construction, the plaintiffs' claim is without merit. Section 8.3 of the TRPA simply provides:

> "Decisions on. applications shall be to approve, deny or approve with conditions as may be deemed necessary, in order to implement and enforce the Agency's plans and ordinances. Conditions also may include the obtaining of approvals of permits from other federal, state, or local agencies, as may be required by law before the Agency permits become effective."

The second sentence of the section seems primarily directed at ensuring agency authority to condition its approval of a project on the approval of other state or federal agencies. To read it, as plaintiffs would, to disavow the agency's authority to deny an application without prejudice pending completion of a comprehensive plan does violence to its plain import. Moreover, such a construction is at odds with the discretion and responsibility elsewhere vested in the agency to develop and enforce a sound and effective regional plan for the Lake Tahoe Basin, *see People ex rel. Younger v. TRPA, supra.* Accordingly, plaintiffs' second claim to relief shall be dismissed on the ground that it fails to state an actionable claim, Fed.R.Civ.P. 12(b)(6).

This Court finds no inadequacy or grave potential for conflict in entrusting to the respective state courts the responsibility of reviewing the evidentiary bases for TRPA decisions on permit applications. Indeed, this Court does not believe itself vested with the responsibility of reviewing the evidentiary bases for TRPA decisions. There is thus no reason to adopt a broader standard of review with respect to plaintiffs' claim that the Board's action was arbitrary and capricious than has been adopted by any other federal court in reviewing the action taken by local zoning boards in

permit or variance applications. Those decisions make it clear that:

> "Courts are not to assume the role of a 'super zoning board.' A decision not to rezone a particular tract is vested in the discretion of the proper municipal zoning authorities and their legislative decisions are not to be subjected to court scrutiny to determine whether their refusal was expedient or provident. Our function in this type of case is to ascertain whether there has been a transgression upon the property owner's constitutional rights. In order to support his constitutional claims the plaintiff is required to prove that the defendants' actions were clearly arbitrary, unreasonable and discriminatory and bore no substantial relation to the health, safety, convenience and welfare of the community."

*Burns v. City of Des Peres,* 534 F.2d 103, 108 (8th Cir. 1976) (citations omitted); *see also South Gwinnett Venture v. Pruitt, supra; Miller & Son Paving, Inc. v. Wrightstown Township Civic Ass'n,* 443 F.Supp. 1268 (E.D.Pa.1978); *6th Camden Corp. v. Township of Evesham,* 420 F.Supp. 709 (D.N.J.1976). The complaint itself reveals that the TRPA based its denial either on its desire to forestall definitive action pending development of a regional air quality plan, or because it did not believe the community need for a medical facility to outweigh the project's potential adverse impact on air quality. Either or both of these reasons suffices to establish a rational relation between the Board denial and the health, welfare or safety of the community.

■ Plaintiffs' third claim is more specific, alleging that several of the Board members were impermissibly biased in their advance reception of evidence pertaining to need. It is clear, however, that "the mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." *Withrow v. Larkin,* 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975). With respect to defendant Jean Stoess, plaintiffs have made the additional allegation that her participation in the hearing was tainted by her service on the Executive Board of the Greater Nevada Health Systems Agency, an agency which presented evidence at the plaintiffs' hearing before the TRPA.

Mrs. Stoess, in addition to being a member of the TRPA Board, is a member of the Board of County Commissioners of Washoe County, Nevada, and is also a member of the Board of Directors of "Greater Nevada Health Systems Agency" which was created pursuant to federal laws governing public health and welfare (42 U.S.C. § 300*l*). The complaint alleges that plaintiffs received a certificate affirming the need for the proposed hospital facility from the Nevada Health Planning Agency (now the State Health Coordinating Council) which is an administrative agency established by N.R.S. 439A.010 et seq. The federal statutes authorize the Governor to designate the agency and require state review of "need" and "cost effectiveness" as conditions precedent to the receipt of federal funds in aid of state medical facilities. The State Health Coordinating Council was expressly created for the purpose of acting as the state health planning and development agency for the purposes of the Federal Act (42 U.S.C. § 300 k–t incl.).

The Supreme Court has written extensively concerning due process in the composition of administrative boards. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Hortonville District v. Hortonville Educ. Assoc.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). *Larkin* squarely holds that a combination of investigative and adjudicative functions does not necessarily create an unconstitutional risk of bias in administrative adjudication. "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law." 421 U.S. at 56, 95 S.Ct. at 1469.

The *Hortonville* case is even more pertinent to plaintiffs' claims here. In that case, Chief Justice Burger, speaking for the court, wrote:

"Respondents' argument rests in part on doctrines that have no application to this case. They seem to argue that the Board members had some personal or official stake in the decision whether the teachers should be dismissed, comparable to the stake the Court saw in *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), or *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); see also *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and that the Board has manifested some personal bitterness toward the teachers, aroused by teacher criticism of the Board during the strike, see, e. g., *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Even assuming that those cases state the governing standards when the decisionmaker is a public employer dealing with employees, the teachers did not show, and the Wisconsin courts did not find, that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity. The Wisconsin Supreme Court [*Hortonville Educ. Assn. v. Hortonville District*] was careful 'not to suggest . . . that the board members were anything but dedicated public servants, trying to provide the district with quality education . . . within its limited budget.' 66 Wis.2d [469], at 494, 225 N.W.2d [658], at 671. That court's analysis would seem to be confirmed by the Board's repeated invitations for striking teachers to return to work, the final invitation being contained in the letter that notified them of their discharge.

"The only other factor suggested to support the claim of bias is that the School Board was involved in the negotiations that preceded and precipitated the striking teachers' discharge. Participation in those negotiations was a statutory duty of the Board. The Wisconsin Supreme Court held that this involvement, without more, disqualified the Board from deciding whether the teachers should be dismissed:

'The board was the collective bargaining agent for the school district and thus was engaged in the collective bargaining process with the teachers' representative, the HEA. It is not difficult to imagine the frustration on the part of the board members when negotiations broke down, agreement could not be reached and the employees resorted to concerted activity. . . . They were . . . not uninvolved in the events which precipitated decisions they were required to make.' Id., at 493–494, 225 N.W.2d, at 671.

Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *FTC v. Cement Institute,* 333 U.S. 683, 700–703, 68 S.Ct. 793, 803–804, 92 L.Ed. 1010 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); see also *FTC v. Cement Institute, supra,* 333 U.S., at 701, 68 S.Ct. 793, 803."

426 U.S. at 491–93, 96 S.Ct. at 2313–14 (footnote omitted).

The complaint in the instant case does not even intimate that any member of the TRPA board entertains a personal bias or prejudice against plaintiffs or has any pecuniary interest whatsoever in the dispute or its resolution. Everything alleged relates to policy attitudes, investigation and the reception and consideration of allegedly irrelevant evidence. These allegations are a

far cry from a showing of an intolerably high risk of infringement of due process deemed necessary to thwart customary processes of administrative agencies.

▪▪▪ The only precedent cited by plaintiffs is *Texaco, Inc. v. F.T.C.*, 118 U.S. App.D.C. 366, 336 F.2d 754 (1964) in which the appellate court held that the bias demonstrated by the Chairman of the Commission in a public address concerning a pending case disqualified him from participating in the decision. The case is distinguishable on the facts. No similar situation is alleged here. Further, the disqualification was raised by motion before the Commission heard and acted on the case. There is no allegation of any pre-judgment attack on the composition of the TRPA or the qualifications of any of its members in this case. It is the general rule that it is necessary to bring the alleged disqualification of a member of an administrative board to the attention of the board before its decision for the point to be assertable in a court review of the proceedings. *United States v. Litton Industries, Inc.*, 462 F.2d 14 (9th Cir. 1962); *Marcus v. Director*, 179 U.S.App.D.C. 89, 548 F.2d 1044 (1976); *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567 (4th Cir. 1975); *Fuentes v. Roher*, 519 F.2d 379 (2nd Cir. 1975); *International Paper Co. v. Federal Power Comm.*, 438 F.2d 1349 (2nd Cir. 1971), *cert. denied* 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971).

It seems unlikely that plaintiffs will be able to amend the complaint to state a claim for relief, but they are entitled to try.

Accordingly,

*IT HEREBY IS ORDERED* that the complaint is dismissed with leave granted to file an amended complaint within twenty (20) days.