**TOWN OF GREENHORN, an Oregon Municipal Corporation, Gail L. Poyser, Miles F. Potter, Lillian Potter and Guy Miller, Plaintiffs-Appellees,**

v.

**BAKER COUNTY, OREGON, Defendant-Appellant.**

**No. 77–2388.**

United States Court of Appeals, Ninth Circuit.

April 20, 1979.

Rehearing Denied May 22, 1979.

Jesse R. Himmelsbach, Jr., Baker, Or., for defendant-appellant.

John C. Caldwell, Oregon City, Or., for plaintiffs-appellees.

Before WRIGHT and ANDERSON, Circuit Judges, and McNICHOLS, District Judge.[*]

EUGENE A. WRIGHT, Circuit Judge:

Baker County appeals from a judgment declaring that it has no interest in disputed property within the Town of Greenhorn, Oregon, and appointing a successor trustee to the property pursuant to 43 U.S.C. § 718 (1970), the Townsite Act. Because the case does not present a federal question, the district court lacked jurisdiction. We reverse.

## FACTS

The Townsite Act, 43 U.S.C. § 718 (1970),[1] provided that when public lands had been settled and occupied as a town site, if the town was incorporated, its corporate authorities had the right to enter the land at the proper land office "in trust for the several use and benefit of the occupants thereof, according to their respective interests."

Greenhorn was a thriving town during Eastern Oregon's mining boom in the 1800's. It was incorporated in 1903[2] and, in 1912, Simeon Richardson, as mayor of Greenhorn, procured a patent in trust under

---

\* Of the District of Idaho.

1. 43 U.S.C. §§ 718 and 721 were repealed by Pub.L. No. 94–579, 90 Stat. 2789 (1976).

2. Appellant argued in district court that the town had never been validly incorporated. It also contends that the town was disincorporated pursuant to Or.Rev.Stat. § 221.650 (1977), upon delivery of a deed of the unconveyed property in the town to Baker County.

In February, 1976, after appellees sued in district court, the district attorney of Baker

§ 718. He conveyed a few lots to the occupants in accordance with the statute, but the property subject to this suit was unoccupied and remained in trust.

Greenhorn eventually became a ghost town. In 1954, Richardson executed a quitclaim deed of his interest in Greenhorn to Baker County, but delivered the deed to his niece, not to county officials. When he died in 1955, his niece took the deed to the county judge of Baker County, who recorded it.

In the 1960's, several families resettled in Greenhorn, although no one lives there permanently.[3] Some property owners in Greenhorn decided to reorganize a government for the town.[4] No one had been elected since Richardson left Greenhorn in the 1940's. Those elected officials, together with other property owners, brought this action [5] seeking

(1) a declaration that the deed by Richardson to the county was invalid;

(2) a declaration that the county has no interest in the land;

(3) appointment of a trustee of the land described in the deed (as a successor to Richardson).[6]

County instituted a quo warranto action in Oregon circuit court in which he pressed the disincorporation argument and others. Appellant now argues that this court should abstain from exercising its jurisdiction so that issues of state law may be solved in state court, perhaps obviating the need to address federal questions. Our conclusion that the district court lacked subject matter jurisdiction eliminates the need to address either the abstention issue or the Eleventh Amendment, statute of limitations, laches, or adverse possession arguments raised by appellant.

3. Most appellees own recreational property in Greenhorn but live in the Portland area. They vacation in Greenhorn during the summer. Heavy winter snows make the area difficult to reach.

4. In conjunction with the decision to revive the government of Greenhorn, three of the appellees registered to vote in Baker County. Subsequently, these three drove to Greenhorn and held an election in which they were candidates, voters, and election board.

5. The district court determined that the residents had standing to sue under § 718 "because

The district court did not decide whether the deed was valid or validly delivered. It held that, assuming the validity of the deed, Baker County would only "hold the land in trust for the benefit of the occupants of Greenhorn."

The court determined that Baker County had interests adverse to those of the trust beneficiaries [7] and concluded that a successor trustee should be appointed because Baker County's status as trustee "would present a classical example of a conflict of interest which a court of equity will redress." It also declared that the county has no interest in the disputed property.

## PRIVATE CAUSE OF ACTION

This court recently reviewed the issue of federal question jurisdiction in *Keaukaha-Panaewa Com. v. Hawaiian Homes Comm'n.*, 588 F.2d 1216 (9th Cir. 1978). There, plaintiffs argued that the defendant, charged with administering lands held in trust for native Hawaiians, had violated both the Hawaiian Homes Commission Act, Pub.L. No. 67–34, 42 Stat. 108 (1921), which created the Commission, and the Hawaii Admission Act, Pub.L. No. 86–3, 73 Stat. 4

they are current 'occupants' of the area and because the interests of *bona fide* occupants under this statute are descendible," citing *Stringfellow v. Cain*, 99 U.S. 610, 25 L.Ed. 421 (1878).

Appellants do not contest appellees' standing on this appeal.

6. The district court thus described the motives for the suit:

[M]any [of Greenhorn's residents] are upset by the County's failure to give adequate attention and protection to the town, many hope to preserve the town's unusual character, and many fear that their hopes and the County's plans (or lack thereof) for the town are inconsistent. Perhaps a few also hope to gain financially by wresting control from the County.

7. The court explained:

As trustee, [the County] would owe its loyalty to the occupants alone; as a county, it must . . . occasionally prefer other residents of Baker County over those who maintain homes in Greenhorn.

(1959), which transferred title to the lands in question to the state of Hawaii.

The court found that "two discrete issues" were involved: "whether there exists (1) a private cause of action, and (2) federal question jurisdiction." 588 F.2d at 1220. Each is an "equally lethal potential obstacle" to claims based on a federal statute. *Id.* at 1224. As to the Admission Act claims, the court found that there was no private right of action. As to the Commission Act claims, it found that there was no federal question jurisdiction.

Here, there is also a threshold question whether the Townsite Act creates a private cause of action for plaintiffs such as these. The Act does not expressly provide that "a private party . . . can enforce duties and obligations imposed by the Act; . . ." *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974). We need not reach this issue because we find that there is no federal question jurisdiction.

## FEDERAL QUESTION JURISDICTION

The district court found that the case arose under the following provisions of the Townsite Act:

§ 718. Entry of town authorities in trust for occupants.

Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales there-

of, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated.

§ 721. Acts of trustees.

Any act of the trustees not made in conformity to the regulations alluded to in section 718 of this title shall be void.

Appellees direct us both to the Act and to 43 C.F.R. § 2763.2(b) (1976), which states:

The execution of the trust as to the disposal of the lots and the proceeds of sales is to be conducted under regulations prescribed by the State laws. Acts of trustees not in accordance with such regulations are void.

Because federal law created the trust relationship which they seek to enforce, and because Oregon enacted no laws or regulations with respect to § 718 lands, appellees conclude that the court is forced to interpret the relevant federal statutes to determine the rights of trust beneficiaries. Neither point persuades us that appellees' claims necessarily arise under federal law.

The relevant cases do not supply a clear and logical test for establishing when a case arises under federal law, 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3562 at 397–414 (1975); Cohen, *The Broken Compass: The Requirement That A Case Arise "Directly" Under Federal Law,* 115 U.Pa.L.Rev. 890 (1967); Mishkin, *The Federal "Question" in the District Courts,* 53 Col.L.Rev. 157 (1953).

This circuit addressed the question in *Hawaiian Homes,* and earlier in *League to Save Lake Tahoe v. B.J.K. Corp.,* 547 F.2d 1072, 1074 (9th Cir. 1976). In the latter case, we stated that to establish federal jurisdiction, plaintiffs must show that the federal question was "well-pleaded" and that the claim arose "directly" under federal law, 547 F.2d at 1074.[8] In the former, we

---

**8.** We cited *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), for the well-pleaded complaint rule and *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), for the requirement that claims arise "directly" under federal law.

stressed the requirement that claims arise "directly" under federal law.[9]

A federal law is well-pleaded if it "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914).

Appellees sued as beneficiaries of the trust established under § 718. They argue that Richardson's conveyance to Baker County was void under § 721 because the object of the trust, conveyance of the land to occupants, had not yet been accomplished. Their present rights as beneficiaries are predicated upon §§ 718 and 721; therefore the federal law appears well-pleaded.

It is less easy to determine whether appellees' claims arise "directly" under federal law. The Supreme Court has said that:

[a] suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States.

*Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912).

Earlier, in *Shoshone Mining Company v. Rutter*, 177 U.S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864 (1900), the Court noted that Congress "has so constructed the judicial system of the United States that the great bulk of litigation respecting rights of property, although those rights may in their inception go back to some law of the United States, is in fact carried on in the courts of the several States."

More recently, in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 683, 94 S.Ct. 772, 785, 39 L.Ed.2d 73 (1974), Justice Rehnquist, concurring in the majority opinion, pointed out that:

[t]he federal courts have traditionally been inhospitable forums for plaintiffs asserting federal-question jurisdiction of possessory land claims. The narrow view of the scope of federal-question jurisdiction taken by the federal courts in such cases probably reflects a recognition that federal issues were seldom apt to be dispositive of the lawsuit. Commonly, the grant of a land patent to a private party carries with it no guarantee of continuing federal interest and certainly carries with it no indefinitely redeemable passport into federal court. On the contrary, . . ., the land thus conveyed was generally subject to state law thereafter.

Here, appellees sought and received a declaration that the county has no interest in the land at issue. Nevertheless, they attempt to escape the force of *Shoshone* and *Shulthis* by characterizing their action as one to enforce a trust created under federal law, not to resolve conflicting claims to land.[10] In *Hawaiian Homes*,

---

**9.** We quoted Professor Mishkin's statement that original federal jurisdiction requires " 'a substantial claim founded "directly" upon federal law'." 588 F.2d at 1225, *quoting* Mishkin, 53 Col.L.Rev. at 165–168.

**10.** Appellees also cite *Scully v. Squier*, 215 U.S. 144, 30 S.Ct. 51, 54 L.Ed. 131 (1909), and *Dunton v. Muth*, 45 F. 390 (D.Mont. 1891), as cases in which courts found federal question jurisdiction based upon § 718.

In *Scully*, the Court properly held that the claim for relief arose under federal law. The territorial legislature had passed laws providing for the surveying, platting, and disposal of land in Lewiston, Idaho, pursuant to § 718. The

final survey did not accurately reflect the size of the occupants' lots, severing parts of buildings and existing improvements.

The Court was required to construe § 718 to determine the scope of the authority granted to states and territories under the act. It concluded that "[t]he object of the state legislation, . . . ., was to consummate the grant of the Government to the occupants of the land, not to alter or diminish it." 215 U.S. at 154, 30 S.Ct. at 53. The appellant, claiming under the faulty survey, could not prevail.

*Dunton* dealt with a boundary dispute in which each party claimed land under deeds from the § 718 trustee. The court concluded, with limited discussion, that resolution of the

plaintiffs also sued to enforce a trust created by federal statutes. We said:

> The Commission Act, as originally enacted, created certain benefits for native Hawaiians. It is clear, however, that for all practical purposes these benefits have lost their federal *nature*.

588 F.2d at 1226 (emphasis in original).

Here, too, although appellees' rights originated under an act of Congress, they have lost their federal nature. The issues raised by appellees (the validity of a deed, the administration of a trust) are questions traditionally relegated to state law. Indeed, the district court only referred to § 718 to determine whether appellees had standing to sue under that statute. To decide the principal question, whether Baker County had any interest in land in Greenhorn, the court relied exclusively upon Oregon law.

In *Hawaiian Homes*, we quoted Justice Cardozo's wise counsel to use "common sense" in determining whether claims arise "directly" under federal law. 588 F.2d at 1226, *quoting Gully v. First National Bank*, 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936). In *League to Save Lake Tahoe*, we recognized that "pragmatic considerations" must play a part in the determination. 547 F.2d at 1074. *See generally* Cohen, 115 U.Pa.L.Rev. at 905–915.[11]

This case turns primarily upon issues of state law in which federal courts have no special expertise. There is no reason to believe that state courts will be hostile to the claims asserted. The reasons which support federal jurisdiction are simply not present.

The judgment of the district court is reversed.

---

question depended upon "the construction of said [statute]." 45 F. at 395.

*Dunton* was decided before federal courts established the "narrow view of the scope of federal-question jurisdiction" in cases involving possessory land claims. *See Oneida Indian Nation*, 414 U.S. at 683, 94 S.Ct. at 785 (Rehnquist, J., concurring). Furthermore, its conclusion that the court would have to construe the statute to resolve the issue before it is questionable. We decline to follow it here.

**11.** Professor Cohen listed the following relevant considerations:

the extent of the caseload increase for federal trial courts if jurisdiction is recognized; the extent to which cases of this class will, in practice, turn on issues of state or federal law; the extent of the necessity for an expert federal tribunal to handle issues of federal law that do arise; the extent of the necessity for a sympathetic federal tribunal in cases of this class.

115 U.Pa.L.Rev. at 916.