**THURSTON MOTOR LINES, INC.,**
**Plaintiff-Appellant,**

v.

**JORDAN K. RAND, LTD.,**
**Defendant-Appellee.**

**No. 80–5449.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1981.

Decided July 27, 1982.

Christopher Ashworth, Garfield, Tepper & Ashworth, P. C., Los Angeles, Cal., for plaintiff-appellant.

Deborah B. Schwarz, Lipofsky, Lande & Schulman, Los Angeles, Cal., for defendant-appellee.

Before CHOY and NELSON, Circuit Judges, and INGRAM,* District Judge.

* The Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

CHOY, Circuit Judge:

This is a simple contract-collection action which normally would have been brought in state court. Thurston Motor Lines seeks to recover $661.41 in motor freight charges that Jordan K. Rand, Ltd. allegedly promised to pay. Thurston Motor sued in federal court solely because the charges agreed upon in the shipping contract complied with the rate and tariff provisions of the Interstate Commerce Act, 49 U.S.C. §§ 10701–10786. The district court held that this tangential relationship to federal law cannot support federal-question jurisdiction under 28 U.S.C. § 1337.[1] We agree.

I

■ The precise limits of federal-question jurisdiction are uncertain. *See, e.g., Town of Greenhorn v. Baker County*, 596 F.2d 349, 351 (9th Cir. 1979). We have, however, recognized two requirements: "plaintiffs must show that the federal question was 'well-pleaded' and that the claim arose 'directly' under federal law." *Id.*, citing *League to Save Lake Tahoe v. B. J. K. Corp.*, 547 F.2d 1072, 1074 (9th Cir. 1976).

"Under the 'well-pleaded complaint' requirement, federal jurisdiction exists only where the plaintiff would be required to plead and prove a proposition of federal law to win a default judgment." *League to Save Lake Tahoe v. B. J. K. Corp.*, 547 F.2d at 1074 (citations omitted). Neither party disputes that state law governs what must be alleged in order to recover for the alleged breach of contract. The critical allegations made by Thurston Motor, which seem the type usually made in a state contract-collection action, are that Rand, Ltd. contracted with Thurston Motor to transport certain goods for a set fee, Thurston Motor transported the goods, and Rand, Ltd. refused to pay as promised. Thurston Motor has not identified and we cannot

readily discern any proposition of federal law that a court need confront in deciding what, if anything, can be recovered.[2]

Even if in order to win a default judgment Thurston Motor would have to mention that the parties set the shipping fee in accordance with the Act, the case would not arise *directly* under federal law. We have drawn no bright line to determine when a plaintiff satisfies this second requirement for federal-question jurisdiction. *See Town of Greenhorn v. Baker County*, 596 F.2d at 352. Instead, we have inquired generally whether the claim is federal in nature, *Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n*, 588 F.2d 1216, 1226–27 (9th Cir. 1978), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979), or whether federal law is basic or collateral to the claim, *League to Save Lake Tahoe v. B. J. K. Corp.*, 547 F.2d at 1074. Thurston Motor's claim relies on state contract law and has at most a collateral relationship to the Interstate Commerce Act.

II

Although we find the lack of federal-question jurisdiction obvious, controlling precedent seems at first glance to suggest the opposite result.

The most troublesome case is *Louisville & Nashville Railroad v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918). In *Rice*, the Supreme Court found federal-question jurisdiction over a suit to recover $145 allegedly due the carrier for the shipment of livestock interstate under tariffs regulated by the Interstate Commerce Act. A fact we believe essential to the finding of jurisdiction is that the parties had an understanding requiring the carrier to assess *all* charges immediately upon delivery of the livestock. This arrangement enabled the shipper to include the transportation costs

---

1. Most cases on federal-question jurisdiction concern 28 U.S.C. § 1331. The statutory test under both § 1331 and § 1337 is whether the case "arises under" federal law. We make essentially the same inquiry in both instances. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 n.1 (9th Cir. 1973).

2. We do not, of course, decide whether a carrier could identify a well-pleaded proposition of federal law in some future case.

in the price at which it sold the livestock. The dispute resulted from the carrier billing the shipper after the delivery and sale for an additional $145 to cover disinfecting the freight cars. Though contrary to the parties' understanding, the additional charge complied with lawful tariffs.

The discrepancy between the parties' understanding and the lawful tariffs is important because unlike the well-pleaded complaint in the case before us, the one in *Rice* could not have alleged that the shipper agreed to pay the amount sought. The carrier there had to rely exclusively on the Act to override the parties' understanding. *Rice* therefore was not a simple contract-collection action.

■ Distinguishing between claims that must rely on the Act, as in *Rice*, and those that rely on the parties' agreement, as in the case before us, conforms to the overriding purpose of the Interstate Commerce Act. Congress sought to prohibit carriers from charging different shippers different fees. *Louisville & Nashville Railroad v. United States*, 282 U.S. 740, 749, 51 S.Ct. 297, 300, 75 L.Ed. 672 (1930); *Farley Terminal Co. v. Atchison, Topeka and Santa Fe Railway*, 522 F.2d 1095, 1097 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975). We would not further this end by asserting jurisdiction over Thurston Motor's action to collect a properly-agreed-upon shipping charge.

The Court in *Rice* did not focus on the discrepancy between the understanding and the tariffs in finding jurisdiction. However, our conclusion about the importance of the discrepancy is supported by the only Supreme Court decision which both cites *Rice* as support for a finding of jurisdiction and discusses a carrier's ability to collect lawful charges. *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939), concerned a new tariff properly filed with the Interstate Commerce Commission that required shippers to pay for the installation of special doors on box cars used to ship grain. In the past, carriers had borne the expense. The shipper in *Lowden* objected to the new

tariff, notified its carrier prior to the shipment that it would not pay for the installation, and then refused to pay $374 owed under the tariff. The Supreme Court focused on the discrepancy between the possible understanding of the parties and the new tariff, even framing the issue to be "whether a carrier's charges for services, actually utilized by a shipper and authorized by a tariff requiring prior arrangements or services, are collectible when the services are rendered on orders, preceded or accompanied by denials of legal liability." *Id.* at 517, 59 S.Ct. at 613. The Supreme Court has never suggested that *Rice* supports jurisdiction outside this context. *See also Roco Worldwide, Inc. v. Constellation Navigation*, 660 F.2d 992, 994 (4th Cir. 1981) (construing *Rice* to involve an agreed-upon undercharge).

■ We can find no other adequate ground for the jurisdictional holding in *Rice*. The only possibility suggested in *Rice* is that:

The Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act.

247 U.S. at 202, 38 S.Ct. at 429. *See also Southern Pacific Transportation Co. v. Commercial Metals Co.*, —— U.S. ——, ——, 102 S.Ct. 1815, 1818, 72 L.Ed.2d 114 (1982). But the existence of a federal duty to collect lawful charges does not mean that the carrier can bring a simple contract-collection action in federal court. As long as state courts entertain such lawsuits, the carrier can satisfy its duty without coming into federal court. We understand the federal duty to collect to give rise to federal-question jurisdiction only over lawsuits against carriers which do not collect proper charges.

Unless the Court based its finding of jurisdiction on the discrepancy between the parties' understanding and the lawful tariff, we doubt that *Rice* is still good law. The term "arising under," though once construed expansively, has taken on a narrower

meaning.[3] As the Supreme Court noted in its landmark decision, *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936): "Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions [for federal-question jurisdiction]."[4] Rather than conclude that *Rice* is one of the outdated "less exacting" cases, we choose to construe *Rice* as holding only that federal-question jurisdiction exists over claims by a carrier for nonpayment of lawful fees when the parties had an understanding or agreement inconsistent with tariffs set in compliance with the Interstate Commerce Act.

A second troublesome precedent, *White v. Atchison, Topeka & Santa Fe Railway*, 149 F.2d 919, 920 (9th Cir. 1945), contains the statement: "Since interstate commerce laws are involved, the district court had jurisdiction ...." But the jurisdictional holding in *White* is distinguishable on the same ground as that in *Rice*. The carrier sued to collect from the shipper an amount required by a lawful tariff but contrary to their agreement. For the reasons given above, federal jurisdiction turns on the existence of the discrepancy.

### III

We find no adequate basis here for jurisdiction under 28 U.S.C. § 1337. Apparently, the Seventh Circuit Court of Appeals would decide this matter differently. *Madler v. Artoe*, 494 F.2d 323 (7th Cir. 1974). *See also Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560, 562 (1st Cir. 1976) (under Shipping Act); *George Transport and Rigging Co. v. International Publications Equipment Corp.*, 425 F.Supp. 1351, 1352 n.2 (E.D.Pa. 1977) (under Interstate Commerce Act).

We, however, hold that there is no federal-question jurisdiction.

AFFIRMED.

---

**3.** Many scholars have analyzed the change. *See, e.g.,* Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law,* 115 U.Pa.L.Rev. 890 (1967); Mishkin, *The Federal "Question" in the District Courts,* 53 Colum.L.Rev. 157 (1953); Bergman, *Reappraisal of Federal Question Jurisdiction,* 46 Mich.L.Rev. 17 (1946).

**4.** Because *Gully* factually resembles the case before us, a brief review of the holding there is instructive. The defendant had allegedly breached a contractual duty to pay. "There [was] no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law." 299 U.S. at 114, 57 S.Ct. at 98. Consequently, the Court found, as we do here, no federal-question jurisdiction.