**KANSAS CITY TERMINAL RAILWAY COMPANY, Plaintiff-Appellant,**

**Interstate Commerce Commission, Intervening Plaintiff-Appellant,**

**v.**

**JORDON MANUFACTURING COMPANY, Defendant-Appellee.**

**Nos. 83–1448, 83–1530.**

United States Court of Appeals, Seventh Circuit.

Submitted July 10, 1984.

Decided Dec. 14, 1984 *.

Jack D. Rowe, Lathrop, Kootz, Righter, Clagett & Norquist, Kansas City, Mo., Karen J. Steele, McConnell, Kennedy, Quinn & Johnston, Peoria, Ill., for plaintiff-appellant.

Daniel S. Linhardt, I.C.C., Washington, D.C., for defendant-appellee.

Before BAUER, POSNER, and COFFEY, Circuit Judges.

* This opinion has been circulated among all the judges of this court in regular active service, pursuant to Circuit Rule 16(e) (rehearing en banc *sua sponte* before decision), because it overrules an alternative holding in a previous decision of the circuit, *Overnite Transport Co. v. Chicago Industrial Tire Co.*, 668 F.2d 274, 275–76 (7th Cir.1981). However, no judge voted for a rehearing en banc on the question of overruling that holding.

POSNER, Circuit Judge.

The Kansas City Terminal Railway brought suit against the Jordon Manufacturing Company to recover an amount less than $10,000 in freight charges due the railroad under the tariffs applicable to the shipments in question. The railroad based federal jurisdiction on 28 U.S.C. § 1337(a). The district court dismissed the suit for want of federal subject-matter jurisdiction, 557 F.Supp. 377 (C.D.Ill.1983), and the railroad (joined by the Interstate Commerce Commission, which had intervened in the district court) appeals.

■ The district judge had alternative grounds for dismissing the railroad's suit. The first was that a suit to recover unpaid freight charges does not "arise under" the Interstate Commerce Act, and therefore is not covered by section 1337(a). In so ruling, the judge relied on the Ninth Circuit's decision in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 682 F.2d 811 (9th Cir.1982). But a month after the district judge ruled, the Supreme Court reversed *Thurston*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (per curiam), making clear that *Louisville & Nashville R.R. v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918), which held that such an action does arise under the Interstate Commerce Act (because the Act requires the carriers subject to it to collect the charges shown in their tariffs, in order to prevent the giving of discounts to favored customers, see 49 U.S.C. § 10761(a); *Western Transport Co. v. Wilson & Co.*, 682 F.2d 1227, 1229 (7th Cir.1982)), is still good law.

■ The alternative ground on which the district judge dismissed the case was that the matter in controversy did not exceed $10,000. In 1978 Congress for the first time added a minimum amount in controversy requirement to section 1337, which confers federal jurisdiction of antitrust suits and suits under (other) federal laws regulating interstate or foreign commerce. Act of October 20, 1978, § 9(a), 92 Stat. 1633. As a result of the 1978 amendment, section 1337(a) now includes a provision "that the district courts shall have original jurisdiction of an action brought under [49 U.S.C. § 11707] only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." Although Congress later amended 28 U.S.C. § 1331, the general federal-question jurisdictional statute, to delete the $10,000 minimum amount in controversy requirement of that statute (see Act of Dec. 1, 1980, Pub.Law 96-486, § 2(a), 94 Stat. 2369), it is unlikely that it meant to allow the $10,000 minimum in section 1337(a) to be nullified by the plaintiff's simply basing federal jurisdiction on section 1331 rather than section 1337. See *Pillsbury Co. v. Atchison, Topeka & Santa Fe Ry.*, 548 F.Supp. 28, 30-31 (D.Kan. 1982).

This suit for unpaid freight charges, however, is not a suit under section 11707 of the Interstate Commerce Act, and so is not within the scope of the proviso. Section 11707 makes railroads (and other carriers regulated by the Act) liable to shippers for losing or damaging their shipments; it does not make shippers liable to railroads for not paying freight charges. The statutory language could not be clearer; nor the legislative history of the 1978 amendments to section 1337(a), which reveals that Congress wanted to impose the $10,000 minimum in lost-freight and damaged-freight cases—cases brought, of course, by shippers, not railroads—in order to avert a flood of such cases that was inundating several federal district courts. See S.Rep. No. 117, 95th Cong., 1st Sess. 6-7, 49-50, 53 (1978); 124 Cong.Rec. 34546 (1979) (remarks of Senator Kennedy, floor manager). "Section 15 of the bill reported herewith amends 28 United States Code, sections 1337 and 1445(b) so as to require a $10,000 jurisdictional amount in cases commenced in Federal court, or removed from State court, *for freight damage or delay claims ....*" S.Rep. No. 117, *supra*, at 49 (emphasis added).

In *Thurston*, cited earlier, the amount in controversy was less than $700, yet the Supreme Court did not even mention the $10,000 requirement of section 1337(a),

though if that requirement had been applicable the Court would have had to affirm the Ninth Circuit's dismissal of the case. Of course the Supreme Court may simply have overlooked this provision, but it is more likely that the Court thought its inapplicability too clear to warrant discussion, since as here the suit was by a carrier, not a shipper.

A pre-*Thurston* case in this circuit, *Overnite Transport. Co. v. Chicago Industrial Tire Co.*, 668 F.2d 274, 275–76 (7th Cir. 1981), holds that a motor carrier may not sue a shipper for unpaid freight charges unless the amount in controversy exceeds $10,000. As the provisions in 49 U.S.C. § 11707 regarding motor carriers are, so far as pertinent here, identical to those regarding rail (and also water) carriers, *Overnite* cannot be distinguished from this case. But the amount-in-controversy holding in the case was an alternative holding; it dealt with an issue that had not been briefed by the parties; and in light of *Thurston* and the analysis in this opinion, it was wrong and must be overruled.

Since we are constrained to conclude that the district court erred in both of its alternative grounds for dismissing this case for want of federal jurisdiction, its decision is

REVERSED.